UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MONTAE HOWARD, an individual,

        Plaintiff,

   v.

CITY OF VALLEJO, et al.,

        Defendants.

No. CIV. S-13-1439 LKK/KJN

**ORDER**

Plaintiff Montae Howard is proceeding through counsel with this action pursuant to 42 U.S.C. § 1983. Plaintiff claims defendants City of Vallejo (City) and police officers Robert Greenberg and Robert Kerr violated his federal constitutional rights through excessive use of force and false arrest. Plaintiff also raises several state law claims.

On August 14, 2013, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 8). The motion came on for hearing on November 4, 2013 and is resolved herein
////
////

1

## I. ALLEGATIONS OF THE COMPLAINT

Plaintiff's complaint, filed July 17, 2013 (ECF No. 2), contains the following allegations.  On January 7, 2012, at 10:00 p.m. plaintiff was inside the Five Star gas station on Lincoln Road in Vallejo.  Complaint (ECF No. 2) at 4.  The cashier called the police about a customer using counterfeit money.  Id.  The cashier locked the door from the inside before calling police, leaving customers in the store.  Id.  The accused customer "got into an altercation with the cashier.  The gas station door came off of its hinges during the altercation."  Id.

When City police officers arrived they had trouble getting in the store because of the unhinged door.  Id.  Plaintiff and another man were still in the store when the police entered.  Id.  They turned around and saw City police officers pointing guns at them.  Id.  They immediately got down on the ground, placed their hands behind their backs, and complied with all commands.  Id.  The officers "seemed to focus" on plaintiff.  Id.  Without justification or asking any questions, defendant Greenberg approached plaintiff, dropped his knee into plaintiff's back and grabbed his right arm.  Id.  Defendant Kerr put weight on plaintiff to restrain plaintiff.  Id.  Defendant Greenberg pulled plaintiff's right arm up and back so violently that plaintiff's right elbow broke.  Id.  Plaintiff screamed in agony "You broke my arm."  Id.  Defendant Greenberg replied that he had not broken plaintiff's arm, and defendant Kerr, without asking any questions, kicked plaintiff in the face, which dislodged one of plaintiff's teeth.  Id. at 5.  The cashier begged officers to get

off plaintiff and told them plaintiff "was a customer and his friend." Id. Defendants Greenberg and Kerr released plaintiff with a broken elbow. Id. Plaintiff went to the Sutter Solano emergency room for treatment. Id.

Plaintiff is informed and believed that neither officer has been disciplined for their misconduct. Id. Plaintiff alleges that the failure to discipline "demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference the making of improper detentions and arrests, the use of racial profiling, the use of excessive and/or deadly force, and the fabrication of official reports to cover up" defendants' misconduct. Id. Plaintiff also alleges that there is a pattern or practice of excessive force by these officers. Id. Plaintiff is informed and believed that as a matter of official policy, based on deliberate indifference to constitutional rights primarily of minority citizens, the City has long allowed citizens like plaintiff to be abused by the police, that throughout 2012 numerous citizens have been killed by the police and the City has failed to discipline or retrain any of the officers, which evidences an official policy of deliberate indifference to citizens' rights and resulting false arrests. Id. at 6.

Plaintiff seeks general damages, special damages, punitive damages, injunctive relief, statutory damages, and attorneys' fees. Plaintiff has also demanded a jury trial.

**II.   STANDARDS FOR A RULE 12(B)(6) MOTION TO DISMISS**

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements.

1 Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short
2 and plain statement of the claim showing that the pleader is
3 entitled to relief." The complaint must give the defendant
4 "'fair notice of what the ... claim is and the grounds upon which
5 it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)
6 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

7 To meet this requirement, the complaint must be supported by
8 factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678
9 (2009). Moreover, this court "must accept as true all of the
10 factual allegations contained in the complaint." Erickson v.
11 Pardus, 551 U.S. 89, 94 (2007).

12 "While legal conclusions can provide the framework of a
13 complaint," neither legal conclusions nor conclusory statements
14 are themselves sufficient, and such statements are not entitled
15 to a presumption of truth. Iqbal, 556 U.S. at 679. Iqbal and
16 Twombly therefore prescribe a two-step process for evaluation of
17 motions to dismiss. The court first identifies the non-
18 conclusory factual allegations, and then determines whether these
19 allegations, taken as true and construed in the light most
20 favorable to the plaintiff, "plausibly give rise to an
21 entitlement to relief." Iqbal, 556 U.S. at 679.

22 "Plausibility," as it is used in Twombly and Iqbal, does not
23 refer to the likelihood that a pleader will succeed in proving
24 the allegations. Instead, it refers to whether the non-
25 conclusory factual allegations, when assumed to be true, "allow[
26 ] the court to draw the reasonable inference that the defendant
27 is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.
28 "The plausibility standard is not akin to a 'probability

1 requirement,' but it asks for more than a sheer possibility that
2 a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.
3 at 557).  A complaint may fail to show a right to relief either
4 by lacking a cognizable legal theory or by lacking sufficient
5 facts alleged under a cognizable legal theory.  Balistreri v.
6 Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**III. ANALYSIS**

    **A.  First Cause of Action**

Defendants contend plaintiff has failed to state a claim against the City in his first cause of action and that, as to the City, the first cause of action essentially duplicates the second cause of action.  Defendants also contend this cause of action fails to state a claim under the Fifth, Ninth, or Fourteenth Amendments.

Plaintiff concedes all of these arguments and seeks leave to amend the complaint to reflect that his first cause of action is a Fourth Amendment claim for excessive force and unlawful seizure against defendants Greenberg and Kerr.

Defendants' motion to dismiss will be granted as to plaintiff's first cause of action, which will be dismissed with leave to amend.

    **B.  Second Cause of Action**

Defendants contend plaintiff has failed to allege specific facts sufficient to give rise to municipal liability under Monell v. Dept. of Social Services, 436 U.S. 658 (1978).  Plaintiff disagrees.  In the alternative, plaintiff seeks leave to amend to cure any defects in this claim.

The requirements that pleadings "contain sufficient allegations of underlying facts to give fair notice" and that factual allegations "taken as true must plausibly suggest an entitlement to relief" apply to Monell claims. AE ex rel Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (quoting Staff v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). The elements of a Monell claim are (1) plaintiff was deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

"[A] custom or practice can be 'inferred from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."'" Hunter v. County of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting Nadell v. Las Vegas Metro. Police Dep't, 268 F.3d 924, 929 (9th Cir. 2001) (internal citations omitted). "[E]vidence of inaction – specifically failure to investigate and discipline employees in the face of widespread constitutional violations – can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality.. . . In some circumstances a *policy* of inaction, such as a policy of failing to properly train employees, may form the basis of municipal liability." Hunter at 1234 n.8 (emphasis in original).

1      Plaintiff's <u>Monell</u> claim against the City is supported by
2 his allegations, made on information and belief, that:  (1) the
3 City has failed to discipline defendants Greenberg and Kerr for
4 the incident at bar; (2) members of the Vallejo Police
5 Department, including defendants Greenberg and Kerr, have
6 individually and together engaged in a repeated practice of using
7 excessive force against individuals including plaintiff; (3) as a
8 matter of official policy "rooted in an entrenched posture of
9 deliberate indifference to the constitutional rights of primarily
10 the minority citizens who live in the City of Vallejo" the City
11 has allowed its citizens to be abused by police officers,
12 including defendants Greenberg and Kerr; (4) City police officers
13 have injured and killed numerous citizens in 2012 and none of the
14 officers involved have been disciplined or retrained; and (5) the
15 City knew/had reason to know about the policies, etc. and the
16 conduct complained of and resulting injuries.
17      These allegations do more than "simply recite the elements"
18 of a <u>Monell</u> claim.  <u>Starr v. Baca</u>, 652 F.3d at 1216.  They are
19 sufficient to give the City fair notice of plaintiff's claim that
20 the City has a policy of deliberate indifference to a pattern and
21 practice of excessive use of force and other violations of the
22 constitutional rights of citizens by City police officers,
23 particularly minority citizens, that is manifested in its failure
24 to discipline or retrain officers involved in such incidents.
25      Defendants' motion to dismiss will be denied as to
26 plaintiff's second cause of action.
27 ////
28 ////

**C. Sixth Cause of Action**

Plaintiff's sixth cause of action claims a violation of his rights under California Civil Code § 51.7, which guarantees persons within California the right to freedom from violence or intimidation based on, in relevant part here, race. Plaintiff alleges that he is African-American.

Defendants seek dismissal of this claim as asserted against the City because the statute does not provide a basis for direct liability against a public entity. Specifically, defendants contend that California Civil Code § 51.7 neither contains language creating public entity liability nor references any specific duty of care owed by public entities to people like plaintiff. Plaintiff does not address this contention in his opposition.

> California public entities are not subject to common law tort liability; all liability must be pursuant to statute. See Cal. Gov't Code § 815; see also Guzman v. Cnty. of Monterey, 46 Cal.4th 887, 897, 95 Cal.Rptr.3d 183, 209 P.3d 89 (2009).

AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 638 (9th Cir. 2012). "However, the statute providing for liability need not be part of the Tort Claims Act itself . . . Nor must the statute provide on its face that it is applicable to public entities. 'Rather, a liability is deemed "provided by statute" if a statute defines the tort in general terms.'" Lopez v. Southern Cal. Rapid Transit Dist., 40 Cal.3d 780, 785 n.2 (1985); see also Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 1183 (2003)("direct tort liability of public entities must be based on a specific statute declaring them to be

8

liable, or at least creating some specific duty of care, . . . .")

  Civil Code § 51.7 provides in relevant part:

> (a) All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51…

Cal. Civ. Code § 51.7(a). While the statute does not specifically declare public entities liable for violation of its provisions, it does describe a specific tort: use of violence or intimidation by threat of violence committed against persons or property because of any of a number of characteristics, including race. Defendants' contention that Civil Code § 51.7 does not create a basis for liability against the City is without merit.[1]

  Defendants also contend plaintiff has failed to state facts to support a claim for relief under the statute. They contend that plaintiff has failed to allege any facts showing that plaintiff's race was a motivating reason for the officers' conduct. Plaintiff contends that he has alleged sufficient facts to indicate that the officers were motivated by racial animus; in the alternative, he seeks leave to amend the complaint.

---

[1] Defendants do not contend that the City has a specific statutory immunity from the liability created by Civil Code § 51.7. Cf. Gates v. Superior Court, 32 Cal.App.4th 481, 529-30 (1995) (Grignon, J., dissenting) ("Once it has been determined a public entity and its employees owe a duty to plaintiff, it must next be determined whether the public entity and its employees are immune from liability. The existence of a duty does not overcome an immunity barrier to liability; the two concepts must be separately analyzed.")

Plaintiff alleges that he "is and was readily recognizable as an African-American." Complaint, filed July 17, 2013 (ECF No. 2) at 11. He further alleges that he was one of several people in the gas station when the cashier called the police, that the cashier argued with the customer accused of passing the counterfeit money, that plaintiff and his friend were inside during that altercation and when police arrived, that when the police arrived he and his friend immediately got down on the ground and complied with the officers' orders, that the officers "seemed to focus on" him, and that without asking any him any questions defendant Greenburg pulled his arm so violently he broke it, and, when plaintiff screamed in agony, defendant Greenburg kicked plaintiff in the face, dislodging a tooth from his mouth. Id. at 4. Plaintiff also alleges on information and belief that the City of Vallejo has "as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of primarily the minority citizens" of Vallejo "long allowed its citizens, such as plaintiff . . . to be abused by its police officers." Id. at 6.

Plaintiff's allegations are sufficient to put defendants on notice of his claim that he was subjected to excessive use of force and unlawful seizure because of his race. Defendants' motion to dismiss will be denied as to plaintiff's sixth cause of action.[2]

---

[2] As noted above, plaintiff did not oppose that part of defendants' motion that sought dismissal of the City from plaintiff's sixth cause of action. Plaintiff should clarify in his amended complaint whether he is proceeding against only the two individual defendants on this cause of action or whether is also proceeding against the City.

10

1        **D.   Seventh Cause of Action**

2        Plaintiff's seventh cause of action claims a violation of
3   his rights under California Civil Code § 52.1 (the Bane Act),
4   which authorizes individual civil actions for damages and
5   injunctive relief by individuals whose federal or state rights
6   have been interfered with by threats, intimidation, or coercion.
7   Relying primarily on Shoyoye v. Couty of Los Angeles, 203
8   Cal.App.4th 947 (2012), defendants contend plaintiff has failed to
9   state a claim for relief under this section because he has failed
10  to allege threats, intimidation, or coercion independent of the
11  alleged excessive force and wrongful search.  Plaintiff
12  disagrees, contending that Shoyoye applies only when the
13  defendants' conduct is not intentional.  Plaintiff contends the
14  rule of Venegas v. County of Los Angeles, 32 Cal.4th 820, 843
15  (2004), which was distinguished by the Shoyoye court, applies.

16       California Civil Code § 52.1 "provides remedies for 'certain
17  misconduct that interferes with' federal or state laws, if
18  accompanied by threats, intimidation, or coercion, and whether or
19  not state action is involved."  Venegas v. County of Los Angeles,
20  32 Cal.4th 820, 843 (2004).  In Shoyoye, the state court of appeal
21  held that § 52.1 did not apply to a claim brought by a plaintiff
22  who had been over-detained in a county jail as a result of a
23  clerical error.  The court held that § 52.1 was meant "to address
24  interference with constitutional rights involving more egregious
25  conduct that mere negligence." Shoyoye, 203 Cal.App.4th at 958.

26       Shoyoye has no application to the claims at bar.  Here,
27  plaintiff has adequately alleged that he was subjected to
28  unlawful restraint through use of force and intimidation.

In the reply brief, defendants contend for the first time that the §52.1 claim "improperly seeks to impose liability against the individual officers jointly for the conduct of the other" contrary to California Government Code § 820.8.  The court may properly decline to consider issues raised for the first time in a reply brief.  See U.S. v. Wright, 215 F.3d 1020 (9th Cir. 2000).[3]

Defendants' motion to dismiss will be denied as to plaintiff's seventh cause of action.

**E.  Eighth Cause of Action**

Plaintiff's eighth cause of action is a negligence claim against the City and both defendant officers based on use of excessive force.  Defendants seek dismissal of this claim as to the City on the ground that under California law all government tort liability must be based on statute and plaintiff has failed to plead a statutory basis for his negligence claim.  Plaintiff has not addressed this argument.

Under California law "'there is no common law tort liability for public entities in California; such liability is wholly statutory. [Citations.]'"  McCarty v. State of California Dept. of Transp., 164 Cal.App.4th 955, 975 (2008) (quoting In re Groundwater Cases, 154 Cal.App.4th 659, 688 (2007) and citing Gov. Code, § 815.) Plaintiff does not oppose this part of defendants' motion, and he has not alleged a statutory basis for the negligence claim against the City and has not provided any statutory basis for the claim in his opposition.  Defendants'

---

[3] Of course, that is not to say that the matter may not be presented properly at some future time.

motion to dismiss the City from plaintiff's eighth cause of action will be granted.

### F. Punitive Damages

Defendants seek dismissal of the prayer for punitive damages as to the City. Plaintiff concedes that the City should not be included in his prayer for punitive damages.

### G. Prayer for Injunctive Relief

Relying primarily on City of Los Angeles v. Lyons, 461 U.S. 95 (1982), defendants contend that plaintiff has failed to allege sufficient facts to show he has standing to seek the injunctive relief prayed for in the complaint, an order "enjoining Defendants from authorizing, allowing or ratifying the practice by any police officer employee of Defendant from using excessive and unreasonable force against persons, pursuant to California Civil Code Section52.1" Complaint at 14. Plaintiff contends he has sufficient alleged a policy, pattern and practice of excessive force by City police officers to support his request for injunctive relief at the pleading stage.

In Lyons, the plaintiff

> an African–American man, was stopped at 2:00 a.m. by Los Angeles police officers based on a burned out taillight. According to Lyons' complaint, the officers seized him without provocation and applied a "chokehold." As a result of the chokehold, Lyons lost consciousness, defecated and urinated, and suffered permanent damage to his larynx. Lyons sought an injunction barring the Los Angeles Police Department from using chokeholds except in certain restricted circumstances. The Supreme Court held that Lyons "presumably" had standing to seek damages against the officers and the City of Los Angeles, id. at 105, 103 S.Ct. 1660, but

13

> that in the absence of a realistic threat of future injury Lyons could not "demonstrate a case or controversy with the City that would justify the equitable relief sought." . . . Noting that Article III "case-or-controversy considerations 'obviously shade into those determining whether the complaint states a sound basis for equitable relief,' " id. at 103, 103 S.Ct. 1660 (quoting O'Shea v. Littleton, 414 U.S. 488, 499, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)), the Court concluded that even if Lyons had Article III standing to seek an injunction, the speculative nature of his claim of future injury precluded him from establishing a key prerequisite for equitable relief, "a 'likelihood of substantial and immediate irreparable injury.' " Id. at 111, 103 S.Ct. 1660 (quoting O'Shea, 414 U.S. at 502, 94 S.Ct. 669). The Court explained that "the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate." Id. at 112, 103 S.Ct. 1660.

Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1040-41 (9th Cir. 1999) (quoting Lyons).

Hodgers-Durgin was an action brought by motorists stopped by Border Patrol agents while driving between Nogales, Mexico and communities in Arizona. Neither were doing anything illegal when stopped. In that case, the Ninth Circuit held that the "case or controversy" holding of Lyons does not apply where the plaintiff's encounter with the police was not the result of illegal conduct. Id. at 199 F. 3d 1041-42. The court of appeals nonetheless held that neither plaintiff had "demonstrated a sufficient likelihood of injury to warrant equitable relief." Id. at 1044. Based on specific facts in the record and the fact

14

1    that each plaintiff had only been stopped once in ten years, the
2    court found it "not sufficiently likely that [either plaintiff]
3    will again be stopped by the Border Patrol." Id. The Court of
4    Appeals therefore held that "[i]n the absence of a likelihood of
5    injury to the named plaintiffs, there is no basis for granting
6    injunctive relief that would restructure the operations of the
7    Border Patrol and that would require ongoing judicial supervision
8    of an agency normally, and properly, overseen by the executive
9    branch." Id. Finally, the court held that even though unnamed
10   plaintiffs had been stopped more frequently, and more recently
11   and therefore "might well be able to demonstrate the likelihood
12   of injury required to pursue equitable relief of the sort sought
13   by [the named plaintiff], injunctive relief "is not available
14   based on alleged injuries to unnamed members of a proposed
15   class." Id. at 1045.

16       Plaintiff relies primarily on LaDuke v. Nelson, 762 F.2d
17   1318 (9th Cir. 1985). In LaDuke, the court of appeals affirmed a
18   permanent injunction enjoining the INS from conducting searches
19   of migrant farm housing without warrants, probable cause, or
20   articulable suspicion. The court distinguished Lyons as follows:
21   (1) The district court in LaDuke had made findings on the
22   likelihood of recurrent injury, while the district court in Lyons
23   had not; (2) the district court in LaDuke had "explicitly found
24   that the defendants engaged in a standard pattern of officially
25   sanctioned officer behavior" that violated the constitution, in
26   contrast to the Lyons finding of an absence of such sanctioning
27   by the LAPD; (3) Lyons involved federal court intervention in
28

15

state police affairs, implicating federalism concerns; and (4) plaintiffs in LaDuke were a certified class.

Lyons, Hodgers-Durgin, and Rodriguez all stand for the proposition that plaintiffs' claim for injunctive relief must be resolved on an evidentiary record and not at the pleading stage. Defendants' motion to dismiss plaintiff's claim for injunctive relief will be denied.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (ECF No. 8) is granted in part as follows:

    a. Plaintiff's first cause of action is dismissed with leave to amend.

    b. Plaintiff's eighth cause of action is dismissed as to the City.

    c. Plaintiff's claim for punitive damages is dismissed.

In all other respects, defendants' motion to dismiss is denied.

2. Plaintiff is granted thirty days from the date of this order in which to file and serve an amended complaint.

3. Defendants shall respond to the amended complaint within twenty days of service thereof.

IT IS SO ORDERED.

DATED: November 12, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT